**Ellis BELL, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

**No. 83–2449.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1984.

Decided Aug. 27, 1984.

---

Daniel R. Carter, Little Rock, Ark., for appellant, Ellis Bell.

Steve Clark, Atty. Gen., and Randel Miller, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before HEANEY, BRIGHT and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Ellis Bell appeals from the denial of his petition for a writ of habeas corpus. He argues that he was deprived of the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments, because his attorney failed to move for a directed verdict at his state-court trial. Ordinarily every criminal defense lawyer routinely moves for a directed verdict at the close of the prosecution's case and at the close of all the evidence, and normally it is

counsel's duty to urge every plausible theory of defense. Here, however, counsel believed that such a motion, if successful, would expose his client to the risk of being prosecuted on more serious charges. We hold that this tactical reasoning was not so clearly deficient as to avoid the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). We therefore affirm the judgment of the District Court.

**I.**

On June 5, 1978, the petitioner Bell robbed a convenience store in Pine Bluff, Arkansas. As Bell was leaving the store, a Pine Bluff police officer arrived, responding to a call indicating that a robbery was in progress. Trial Tr. at 139–40. One of the employees pointed to Bell as the robber, and the police officer ordered Bell to "halt." Bell then whirled around with his pistol in his hand, and said, "What do you want?" *Id.* at 140. Bell ordered the officer to surrender his gun and, as he walked towards the officer, "[h]e kept threatening to kill" him. *Id.* at 142. But the officer coaxed Bell to come nearer, where he was able to slap the pistol out of Bell's hand and place him under arrest. Trial Tr. at 142–44.

Bell was charged with the felony offenses of aggravated robbery[1] and interference with a law-enforcement officer.[2] On November 27, 1978, the jury found him guilty of both offenses and sentenced him to serve terms of fifteen and five years on the respective crimes. The trial judge ordered that the sentences run consecutively. (This case concerns only the five-year sen-

1. Ark.Stat.Ann. § 41–2102 (1977).

2. Ark.Stat.Ann. § 41–2804 (1977). This statute provides:
   **Interference with a law enforcement officer.**—(1) A person commits the offense of interference with a law enforcement officer if he knowingly employs or threatens to employ physical force against a law enforcement officer engaged in performing his official duties.

   (2)(a) Interference with a law enforcement officer is a class C felony if:
   (i) the person uses or threatens to use deadly physical force; or
   (ii) the person is assisted by one (1) or more other persons and physical injury to the officer results.
   (b) Otherwise, interference with a law enforcement officer is a class A misdemeanor.

tence for interference. No question is raised about the validity of the sentence for aggravated robbery.) On direct appeal, the Supreme Court of Arkansas affirmed Bell's conviction. *Bell v. State,* 270 Ark. 1, 603 S.W.2d 397 (1980). Bell then filed a petition for permission to proceed under Rule 37 of the Arkansas Rules of Criminal Procedure, challenging, among other things, the effectiveness of his counsel. The Supreme Court of Arkansas denied the petition in an unpublished per curiam order.

Having exhausted his state remedies, Bell filed a *pro se* petition for habeas corpus in federal court, and counsel was appointed to represent him. The principal point urged was that Bell's counsel was constitutionally ineffective in not making a motion for a directed verdict, and that if the motion had been made, it would have been granted, because on the evidence Bell was clearly not guilty of interference with a law-enforcement officer, but rather of the lesser offense of resisting arrest, a misdemeanor defined by Ark.Stat.Ann. § 41–2803 (1977).[3] In support of this theory Bell cited *Breakfield v. State,* 263 Ark. 398, 566 S.W.2d 729 (1978). The District Court referred the case to a magistrate,[4] who issued a memorandum recommending that Bell's petition be denied. The magistrate found that the failure of Bell's counsel to move for a directed verdict did not fall below the level of competence required of counsel and did not prejudice Bell. The magistrate concluded that the law of Arkansas was unsettled at the time of Bell's trial, and that it was not clear how that law would have applied to his case, or that a motion for directed verdict, if it had been made, would have had a reasonable chance of success. Designated Record (D.R.) 67–

68. The District Court[5] accepted the magistrate's recommendations and denied Bell's petition.

## II.

The standards for determining effectiveness of counsel were recently clarified by the Supreme Court in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show a violation of the constitutional right to assistance of counsel, the defendant must show (1) that his "counsel's representation fell below an objective standard of reasonableness," *id.* 104 S.Ct. at 2065, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 2068. In making the first determination, a court must be "highly deferential" to counsel's performance, *id.* at 2065, and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *id.* at 2066.

At the hearing before the magistrate, Bell's state-court trial counsel testified at some length as to his reasons for not moving for a directed verdict on the interference charge, on the ground that under *Breakfield* only a misdemeanor charge for resisting arrest would have been appropriate. He said, among other things:

I could have jumped up and down on interference with a law enforcement officer charge on Bucky Bell, and Bucky Bell could have been charged, for example, with assault with a deadly weapon or assaulting an officer, not just resisting arrest. Bucky Bell turned and put a

---

**3.** This statute provides:

 **Resisting arrest.—**(1) A person commits the offense of resisting arrest if he knowingly resists a person known by him to be a law enforcement officer effecting an arrest.

 (2) "Resists," as used in this section, means using or threatening to use physical force or any other means that creates a substantial risk of physical injury to any person.

 (3) It is no defense to a prosecution under this section that the law enforcement officer

lacked legal authority to make the arrest, provided he was acting under color of his official authority.

 (4) Resisting arrest is a class A misdemeanor.

**4.** The Hon. Henry L. Jones, Jr., United States Magistrate for the Eastern District of Arkansas.

**5.** The Hon. Henry Woods, United States District Judge for the Eastern District of Arkansas.

gun, by his own admission, turned to the officer and told him to leave him alone.

\* \* \* \* \* \*

And I made the decision that the lesser of the evils—if I were to take a chance on getting him charged with assaulting an officer with a deadly weapon or some other related assault charge, or resisting arrest, really, it was of no significant value.

Habeas Hearing Tr. (H.Tr.) 19.

There was no question in my mind that there was in fact some criminal behavior, in addition to the aggravated robbery. And that there was going to be a subsequent substitution of charge.

*Id.* at 36.

There were several other charges that we were almost guaranteed on the testimony that they would find him guilty.

*Id.* at 41. The deputy prosecuting attorney who handled the trial for the State lends credence to this fear. "Had it been me," he said, "I would have charged the man [initially] with attempted capital murder." *Id.* at 50. He added that aggravated assault also would have been appropriate. *Ibid.*

We assume for present purposes that a motion for directed verdict on the interference charge would have been successful, and that that charge would have been dismissed, not because of any factual failure of proof, but because the Supreme Court of Arkansas has construed the interference statute to cover situations where the officer is engaged in some duty other than arresting the defendant. The lesser charge of resisting arrest was not the only other possibility. Counsel feared that success on the motion might cause his client, even after his conviction at the first trial for aggravated robbery, to be charged and convicted at a second trial for a more serious offense, either attempted murder or aggravated assault. This apprehension, he says,

caused him to conclude that his client would be better off to go to the jury in one trial on the charges of aggravated robbery and interference with an officer. Our task is to decide whether this apprehension was reasonable, or, to put it more accurately, whether it was so *un*reasonable that we should condemn counsel's conduct as constitutionally ineffective even under the "highly deferential" standard of *Strickland.* 104 S.Ct. at 2065. Counsel's duty, after all, is not just to score victories on legal points (as, for example, by establishing that the interference charge could not stand consistently with *Breakfield* ), but to do the best he could for his client, that is, to see that his client, if convicted, would be exposed to the smallest possible range of penalties. (The defense on the merits was insanity.)

The theory that counsel acted as he did in order to avoid the State's charging his client with aggravated assault is pretty clearly untenable, for the penalty for aggravated assault could not exceed five years' imprisonment. Aggravated assault was a Class D felony, a less serious offense than the Class C felony of interference with an officer, which carried, at the time, a possible range of imprisonment of two to ten years.[6] But counsel also feared that if the interference charge were dismissed his client might be prosecuted for attempted capital murder, which was a Class A felony, Ark.Stat.Ann. § 41–703(1) (1977), carrying a possible penalty of five to 50 years, or life. *Id.* at § 41–901(1)(a).[7]

In facing the choice whether to move to dismiss the interference charge, counsel had to weigh a number of practical and legal risks: the likelihood that the State, not satisfied with whatever sentence Bell would get for aggravated robbery, might indeed proceed against him for the attempt-

---

**6.** In 1978, when Bell committed these offenses, aggravated assault was a Class D felony, Ark. Stat.Ann. § 41–1604 (1977), with a maximum of five years' imprisonment, *id.* at § 41–901(1)(d).

**7.** Act 620 of 1981, § 8, changed the penalty for Class A felonies to six to 30 years. Ark.Stat. Ann. § 41–901(1)(b) (1983 Cum.Supp.). This change is of course irrelevant to the propriety of a decision made by counsel in 1978.

 

ed capital murder of officer Thomas; [8] the likelihood that a second jury, if the State did so proceed, would convict Bell; and the likelihood that the conviction, if returned by the jury, would stand up under an attack based on the insufficiency of the evidence. There are no clear, objectively demonstrable answers to any of these questions. They are all matters of judgment. Our own view is that the State might well not have been satisfied with the fifteen years for aggravated robbery, that it would have felt compelled to seek some additional punishment for Bell's conduct towards the officer. As to whether the proof at a second trial would have supported legally a conviction for attempted capital murder, no one can say. We cannot know for sure what the proof would have been at a second trial. We do know that the proof at the first trial was legally sufficient to establish that Bell, in the course of committing an aggravated robbery, threatened to use deadly force against the officer. The risk that Bell could have been convicted of attempted capital murder, with a penalty ranging even up to life imprisonment, cannot fairly be called negligible.

Perhaps we would have made a different decision in counsel's place. But the Supreme Court has warned that "every effort [must] be made to eliminate the distorting effects of hindsight," *Strickland v. Washington, supra,* 104 S.Ct. at 2065. The presumption in favor of counsel's judgment is strong, and we owe that judgment a heavy measure of deference. Applying that standard, we cannot say that Bell failed to receive the effective assistance of counsel.

We express the thanks of the Court to Bell's appointed habeas counsel. He has

diligently and effectively represented his client.

Affirmed.

---

**8.** It is not clear whether a new prosecution would have been barred by the Double Jeopardy Clause of the Fifth Amendment. Attempted capital murder may not be the "same offence" as interference with an officer, within the meaning of the Clause. The latter crime requires proof that deadly physical force was used or threatened against an officer, Ark.Stat.Ann. § 41–2804(1), (2)(a)(i) (1977), while attempted capital murder could be found without proof that an officer was involved, Ark.Stat.Ann. § 41–1501(1)(a) (1977), and requires in addition that the State prove "circumstances manifesting

extreme indifference to the value of human life." *Ibid.* Interference with an officer, therefore, may not be a lesser included offense of attempted capital murder, and if it is not, successive prosecutions are normally not barred. See *Brown v. Ohio,* 432 U.S. 161, 164–66 & n. 6, 97 S.Ct. 2221, 2224–26 & n. 6, 53 L.Ed.2d 187 (1977). For present purposes we need decide only that a successive prosecution for attempted capital murder would not have been so clearly barred by double jeopardy as to justify counsel in ignoring the risk.