**Kenneth G. HICKS, Plaintiff–Appellee,**

**v.**

**BROWN GROUP, INC., d/b/a Brown Shoe Company, Inc., Defendant–Appellant.**

**Nos. 88–2769, 88–2817.**

United States Court of Appeals, Eighth Circuit.

Submitted July 21, 1992.

Decided Dec. 30, 1992.

Thomas M. Hanna and Fred A. Ricks, Jr., St. Louis, MO, argued, for defendant-appellant.

Michael J. Hoare and John D. Lynn, St. Louis, MO, argued, for plaintiff-appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges, En Banc.

LOKEN, Circuit Judge, with whom RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges, join.

Kenneth G. Hicks lost his job in 1982 when Brown Group, Inc., reduced the su-

pervisory staff at its Benton, Missouri, terminal. Hicks, a white male then 51 years old, sued and a jury found that he was terminated because of his race in willful violation of 42 U.S.C. § 1981. He was awarded $1.00 in actual damages, $10,000 in punitive damages, and his costs and attorneys' fees. Brown Group appealed and a panel of this court affirmed, one judge dissenting. See *Hicks v. Brown Group, Inc.*, 902 F.2d 630 (8th Cir.1990), which contains a thorough recitation of the background facts.

Brown Group then filed a petition for a writ of certiorari, and the Supreme Court remanded. 111 S.Ct. 1299 (1991). Following remand, the panel unanimously reversed the judgment of the district court, concluding that Hicks's discriminatory discharge claim is not actionable under § 1981 as construed in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), and our en banc decision in *Taggart v. Jefferson County Child Support Enforcement Unit*, 935 F.2d 947 (8th Cir.1991). *Hicks v. Brown Group, Inc.*, 946 F.2d 1344 (8th Cir.), *motion to vacate denied*, 952 F.2d 991 (8th Cir.1991). Hicks then sought a writ of certiorari and the Supreme Court again remanded, this time "for further consideration in light of the Civil Rights Act of 1991." —— U.S. ——, 112 S.Ct. 1255, 117 L.Ed.2d 485 (1992).

■ On remand, the panel submitted the case to the court en banc, recognizing that the Supreme Court's remand requires us to consider again the issue of statutory retroactivity decided by another panel in *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992). We now uphold the decision in *Fray* that § 101(2)(b) of the Civil Rights Act of 1991 does not apply retroactively to cases pending at the time of its enactment. Accordingly, we reinstate the panel's October 9, 1991, decision.

Section 101(2)(b) of the 1991 Act legislatively overruled *Patterson:*

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, *and termination* of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b) (emphasis added). Thus, Hicks's § 1981 claim fails under *Patterson* and *Taggart* but would succeed if this provision in the 1991 Act retroactively applies to his case.

This retroactivity question has already been the subject of substantial judicial exposition. In addition to our decision in *Fray*,[1] at least five other circuits have concluded that various provisions of the 1991 Act do not apply retroactively to cases pending at the time of enactment. *See, e.g., Gersman v. Group Health Assoc., Inc.*, 975 F.2d 886 (D.C.Cir.1992); *Rowe v. Sullivan*, 967 F.2d 186 (5th Cir.1992); *Holt v. Michigan Dept. of Corrections*, 974 F.2d 771 (6th Cir.1992); *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225 (7th Cir.1992); *Baynes v. AT & T Technologies, Inc.*, 976 F.2d 1370 (11th Cir.1992). One circuit has reached a contrary conclusion. *See Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549–56 (9th Cir.1992). Given this wealth of learned judicial discourse, we see no need to redefine the background principles and precedents that shape this significant issue. Instead, we will briefly summarize the reasons that lead us to adhere to our decision in *Fray*.

1. The initial question is whether Congress in the 1991 Act evidenced its intent on this question of retroactivity. The Ninth Circuit concluded that "the language of the Act reveals Congress' clear intention that the majority of the Act's provisions be applied to cases pending at the time of its passage." *Davis*, 976 F.2d at 1550. The court in *Davis* divined that intent from the

---

1. Like this case, *Fray* involved the question whether § 101(2)(b) of the 1991 Act is retroactive. We have applied the *Fray* analysis in holding that other provisions of the 1991 Act do not apply retroactively. *See Hughes v. Matthews*, 980 F.2d 734 (8th Cir.1992) (§ 102(c)); *Davis v.* *Tri–State Mack Distribs., Inc.*, 981 F.2d 340 (8th Cir.1992) (§ 113); *Parton v. GTE North, Inc.*, 971 F.2d 150, 155–56 (8th Cir.1992) (§ 102); *Huey v. Sullivan*, 971 F.2d 1362, 1365 (8th Cir. 1992) (§ 114).

two provisions in the Act that were expressly made prospective only, concluding from these provisions that the rest of the statute must be applied retroactively.

In *Fray,* we concluded that the presence of these provisions does not outweigh the overwhelming legislative evidence that a divided Congress intended "to hand this controversial issue to the judiciary by passing a law that contained no general resolution of the retroactivity issue." 960 F.2d at 1377. Every other circuit to consider the question has agreed. As the D.C. Circuit explained:

> However, given the convoluted legislative history of the Act and the war of interests firing at each other across the floor of both legislative houses, one might view these two subsections not as redundancies, but rather as insurance policies [for those who opposed retroactivity].

*Gersman,* 975 F.2d at 890. We agree that neither the language of the 1991 Act nor its legislative history reflects an identifiable congressional intent that the statute be generally retroactive.

2. With congressional intent indiscernible, we must apply the conflicting presumptions as to statutory retroactivity articulated in *Bradley v. Richmond School Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), on the one hand, and *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), on the other. Under the *Bradley* test, we must apply the Act to pending cases unless it provides expressly to the contrary or manifest injustice would result from retroactive application. But under *Georgetown Hospital,* the Act is prospective unless it expressly provides for retroactive application. Thus, the issue seems to present a choice between two equally applicable but inconsistent lines of Supreme Court precedent.

Of course, when two Supreme Court decisions seem inconsistent, they are seldom equally applicable. If *Bradley* is the more applicable—if it is a controlling precedent—we are not free to ignore it. However, we conclude that *Bradley* involved distinguishable circumstances. In *Bradley,* a statute allowing attorneys' fees in school desegregation cases was applied retroactively to a pending claim for attorneys' fees against a public school district. This case, on the other hand, involves a dispute between private parties. Long before *Bradley,* the Supreme Court noted that, when a new statute may affect private disputes, courts should "struggle hard against a construction which will, by a retrospective operation, affect the rights of parties." *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801), quoted in *Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019.

Section 101 of the 1991 Act expands the range of conduct that will violate § 1981. In *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985), the Supreme Court stated that the *Bradley* presumption of retroactivity should be limited by the "venerable rule of statutory interpretation ... that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." In holding that the 1991 Act does not apply retroactively, many circuits have distinguished *Bradley,* and followed the *Georgetown Hospital* presumption on this ground. *See Gersman,* 975 F.2d at 898–99; *Baynes,* 976 F.2d at 1374–75; *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1374 (5th Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3356 (No. 92–737, Sept. 29, 1992); *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929, 936 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992); *Vogel v. City of Cincinnati,* 959 F.2d 594, 598 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992). We agree.[2]

---

2. While we do not agree with the Ninth Circuit's reasoning, we note that *Davis* retroactively applied the section of the 1991 Act that allows enhanced attorneys' fee awards to a pending claim against a public body, the San Francisco Fire Department. Thus, *Bradley* was arguably a controlling precedent in *Davis.* However, there is also a basis for distinguishing the statutes at issue in *Davis* and *Bradley.* As the Fifth Circuit has noted, in *Bradley* "the statutory change provided only an additional basis for relief already available," whereas "a dramatic change in the

3. Although we can readily distinguish the Civil Rights Act of 1991 from the statute at issue in *Bradley*, we also believe that the conflicting presumptions articulated in *Bradley* and *Georgetown Hospital* reflect truly divergent lines of authority on the question of statutory retroactivity. We recently reviewed these conflicting precedents in *Simmons v. Lockhart*, 931 F.2d 1226, 1230 (8th Cir.1991), and concluded:

> [Where] Congress's silence is ambiguous ... one must choose between the *Bradley* and *Georgetown Hospital* presumptions. The better rule is that of *Georgetown Hospital....* [T]he presumption against retroactive application best preserves the distinction between courts and legislatures: the former usually act retrospectively, settling disputes between persons, the latter usually act prospectively, setting the general rules for future conduct.

*See also Criger v. Becton*, 902 F.2d 1348, 1353–54 (8th Cir.1990).

Some have argued that the Civil Rights Act of 1991 should nonetheless be given retroactive effect because it is "restorative" legislation—by overruling recent Supreme Court decisions such as *Patterson*, the Act restored prior law and therefore did not interfere with justified expectations or vested rights. We agree with the Seventh Circuit's response to this contention:

> When [Congress] "overrules" a Supreme Court decision it is not registering disagreement with the merits of what the Court did; it is laying down a new rule of conduct—ordinarily for the future. Section 1981 dates back to 1866. It is as unlikely that Congress was attempting to restore section 1981 to the understanding of its framers as that *Patterson* in cutting back the earlier decisions had restored the statute to its original understanding. The new civil rights act reflects contemporary policy and politics,

rather than a dispute between Congress and the Supreme Court over the mechanics of interpretation.

*Luddington*, 966 F.2d at 228.

In addition, we conclude that case-by-case application of *Bradley*'s "manifest injustice" exception to the many provisions of the 1991 Act would be unworkable.[3] Focusing on § 101(2)(b) of the Act as an example, some pending § 1981 cases challenge conduct that occurred prior to *Patterson*, while others challenge conduct occurring while *Patterson* was the law. Some challenge conduct that also violates Title VII, while others challenge conduct by private employers who are exempt from Title VII's proscriptions. Absent explicit congressional directive, we think it unwise and improper to undertake the essentially legislative task of adopting "unwieldy distinctions between classes of litigants based on the degree to which they relied on the legal regime antedating" the 1991 Act. *Johnson*, 965 F.2d at 1374. As the Seventh Circuit summarized this dilemma:

> Retroactive application across the board would produce massive dislocations in ongoing litigation and defeat substantial reliance interests of employers. Retroactive application carefully tailored to situations ... in which those reliance interests are minimal would engender enormous satellite litigation and associated uncertainty to fix an indistinct boundary.

*Luddington*, 966 F.2d at 229.

▮ These problems graphically demonstrate that it is Congress that should define, in the legislation, the extent to which a statute is to be retroactively applied. When Congress fails to do so, the presumption that statutes operate prospectively should prevail. Therefore, in this circuit, to the extent that a retroactivity issue reduces to a choice between two equally applicable but inconsistent lines of Supreme

---

remedial consequences of a rule works change in the normative reach of the rule itself." *Landgraf v. USI Film Prods.*, 968 F.2d 427, 433 (5th Cir.1992), *petition for cert. filed*, 61 U.S.L.W. 3371 (No. 92–757, Oct. 28, 1992).

3. We also agree with Justice Scalia that this exception "is just a surrogate for policy preferences ... a rule of discretion, giving judges power to expand or contract the effect of legislative action." *Kaiser Alum. & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 857, 110 S.Ct. 1570, 1587, 108 L.Ed.2d 842 (1990) (concurring op.).

Court precedent, we conclude that "the better rule is that of *Georgetown Hospital.*"

For the foregoing reasons, and for the additional reasons stated in our prior decision in *Fray,* we conclude that § 101 of the 1991 Act may not be retroactively applied to this pending case. Accordingly, the judgment of the district court is reversed and the case is remanded to the district court with directions to dismiss Hicks's § 1981 complaint with prejudice.

HEANEY, Senior Circuit Judge, dissenting, with whom McMILLIAN, Circuit Judge, joins.

Two issues are raised on this appeal: (1) whether the racially discriminatory discharge of Kenneth Hicks in 1982 violates the provisions of 42 U.S.C. § 1981; and (2) if not, whether section 101 of the Civil Rights Act of 1991 applies to Hicks's action. I would answer both questions in the affirmative. Thus, I respectfully dissent.

I recognize that a divided en banc court resolved the first issue in the negative in *Taggart v. Jefferson County Child Support Enforcement Unit,* 935 F.2d 947 (8th Cir.1991). Nonetheless, this issue is raised on appeal and could, and should, be decided differently by this court—if not by this court, then by the United States Supreme Court. I continue to believe that Judge McMillian's eloquent panel opinion in *Hicks v. Brown Group, Inc.,* 902 F.2d 630 (8th

Cir.1990), is the better view of the law. Judge McMillian again expressed his views on this issue in a dissent to *Taggart,* in which he was joined by former Chief Judge Donald Lay and Chief Judge Richard S. Arnold. The dissent supports the proposition that *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), should not bar recovery for employees who have been discharged because of their race. Because the Supreme Court did not specifically address the issue of discriminatory discharge in *Patterson,* it is my hope that it will accept certiorari in this case and resolve the issue once and for all.

Assuming *Patterson* did temporarily bar discriminatory discharge claims under section 1981, I turn now to the question whether section 101 of the Civil Rights Act of 1991 restored Hicks's right to bring this action. I am convinced that it does. The majority holds that unless Congress specifically states that a statute is to be applied retrospectively, a presumption that statutes operate prospectively should prevail.[1] It reasons that *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), overrules *Bradley v. School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), and thus we must look to *Georgetown Hospital,*[2] to determine whether section 101 applies to Hicks's case.[3] It does so even though the

1. In *Davis v. County of San Francisco,* 976 F.2d 1536, 1550 (9th Cir.1992), the court held that "reliance on a presumption is unnecessary, because the language of the Act reveals Congress' clear intention that the majority of the Act's provisions be applied to cases pending at the time of its passage."

2. Although most commentators refer to *Bowen v. Georgetown University Hospital* as *Bowen,* the majority uses the short citation *"Georgetown Hospital."* In the interest of consistency, I will follow the practice of the majority.

3. Even if we could, on our own authority, dismiss a precedent of the Supreme Court, I do not concur with the majority's election of *Georgetown Hospital* over *Bradley.* Other commentators agree:

The *Bowen* [*Georgetown Hospital*] approach cannot be justified on constitutional or policy grounds. Although *Bowen's* clear-statement rule is cloaked in the guise of neu-

trality—making it appear as if the Court is taking a purely hands-off approach—the imposition of the rule is itself a policy choice to avoid resolving statutory dilemmas. Such a policy creates a conundrum in which Congress leaves the issue to the courts, and the courts give back to Congress a task which it cannot complete. The two branches pass the issue back and forth, without ever assessing its validity, impact, or necessity....

. . . .

Moreover, the *Bowen* presumption fails to involve courts in any examination of the effects of particular laws and instead applies a stringent and unyielding test. Statutes differ in purpose and effect, yet the clear-statement rule treats them all identically. In certain cases, the *Bowen* presumption may prevent unjust application of the laws. With some statutes, however, retroactivity "can ... actually serve the cause of legality.... [I]t can serve to heal infringements of the principle

Supreme Court has declined to overrule *Bradley*,[4] and in spite of a specific direction of the Supreme Court that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989).

I realize that Supreme Court Justice Antonin Scalia believes that *Georgetown Hospital* and *Bradley* are irreconcilable and that *Georgetown Hospital* should be adopted as the position of the Court, but Justice Scalia does not speak for the full Court on this issue. It is our responsibility to follow the full Court rather than a single Justice. I was under the impression that we had recognized our responsibility to reconcile Supreme Court decisions in *National Wildlife Fed'n v. A.S.C.S.*, 955 F.2d 1199 (8th Cir.1992). Apparently we are prepared to overrule a precedent that is only ten months old.

In my view, *Georgetown Hospital* and *Bradley* are reconcilable,[5] and lead to the view that courts should, in the words of Judge Patricia Wald,

> presume, absent clear statutory language or legislative history to the contrary, that courts should apply the law in effect at the time they render their decisions, unless Congress would not intend the retroactive application of the new law because that would work an unfairness by upsetting the expectations of the parties concerning the legal consequences of their past conduct.

*Gersman v. Group Health Ass'n, Inc.*, 975 F.2d 886, 902 (D.C.Cir.1992) (Wald, J., dissenting).

As I noted in *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992), a common thread runs through *Bradley* and *Georgetown Hospital. Id.* at 1381. Both express an overriding concern for fairness. Although the sentiment of fairness in *Georgetown Hospital* is less obvious than the explicit and detailed factors outlined in *Bradley*, it is no less fundamental. The *Bradley* fairness factors are: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019.

---

that like cases should receive like treatment." For these statutes, the *Bowen* presumption uncritically sanctions harsh results. When a court applies the clear statement rule to an ambiguous statute *without justification,* it avoids its judicial responsibility to interpret statutes. By refusing to engage in substantial interpretation, the Court may undermine legislative enactments.

Michele A. Estrin, Note, *Retroactive Application of the Civil Rights Act of 1991 to Pending Cases,* 90 Mich.L.Rev. 2035, 2048–50 (1992) (footnotes omitted).

**4.** In *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990), Justice O'Connor, writing for a plurality of the Court, referred only to the "apparent tension" between the two cases. Furthermore, four justices in *Kaiser Aluminum* stated that the tension between *Bradley* and *Georgetown Hospital* is "more apparent than real." *Id.* at 864, 110 S.Ct. at 1591 (White, J., dissenting).

**5.** A recent Note from the *Michigan Law Review* suggests that such reconciliation is possible and desirable:

Instead of providing a presumption, ... a court must determine whether applying the statute at issue to a given case implicates any of the dangers of retroactivity: unsettling expectations, depriving parties of notice, or targeting vulnerable groups. If these concerns arise, a court should decline to apply a statute to pending cases. If these concerns fail to materialize, a court should apply the law to pending cases....

This proposal recognizes the legitimate dangers of retroactivity addressed by *Bowen,* while concurrently allowing the deliberate approach of *Bradley.* This method simply eliminates the irreconcilable conflict between *Bradley* and *Bowen* by allowing courts to reach the heart of the retroactivity debate. In other words, rather than engaging in a useless debate over which presumption to apply, courts focus on actual objections to retroactivity and whether these objections inhere in a particular statute. This inquiry will lead to well-reasoned and inherently more just opinions.

Estrin, *supra,* at 2069.

Before applying the *Bradley* standard, it is important to emphasize that Hicks had secured a judgment in district court *before* the Supreme Court decided *Patterson*. The district court judgment determined that the Brown Group had illegally discharged Hicks because of his race. Both on the date of discharge and on the date that the district court's judgment was entered, discharges because of race were unlawful.[6]

I turn now to the very specific *Bradley* criteria, the first of which is whether this is a mere private case between individuals, in which the rights of the parties are of paramount importance, or whether larger public concerns are involved. *See Bradley*, 416 U.S. at 718–19, 94 S.Ct. at 2019–20. This case transcends the parties. It involves a matter of great national concern: the elimination of discrimination in the workplace. This factor weighs heavily in favor of retroactivity, especially in a case that would establish precedent for application of the 1991 act to other cases in which an employee already has secured a district court judgment that he suffered a racially discriminatory discharge.

The next criterion of the *Bradley* fairness calculus is a consideration of the relevant rights of the parties, and whether retrospective application of a law would infringe or deprive a person of rights that had matured or become unconditional. *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020.

In this case, the Brown Group had a right not to be penalized for conducting its business in accordance with the laws in effect when it took action to discharge Hicks. Hicks, similarly, had a right to recover from his employer for violations of the law as it existed on the date of that discharge. In this case, the retrospective application of section 101 neither infringes nor deprives the settled rights of either party because both parties would enjoy precisely the same rights as they did on the date of discharge and on the date of the district court judgment. On the contrary, the prospective-only application of the statute adopted by the majority infringes what were once Hicks's matured rights.

The final *Bradley* criterion concerns the nature of the impact of the change upon existing rights, *id.*, and whether retrospective application denies fulfillment of justified expectations, or fails to provide citizens with notice of the law so that they may efficiently plan their affairs.[7] In the instant case, only a retrospective application of section 101 would fulfill Hicks's justified expectation that he would not be discharged because of his race. The Brown Group would simply be held to the existing standard of conduct as of the date of Hicks's discharge.[8]

Thus, when all of the *Bradley* factors are considered, I believe a holding that section 101 should apply retrospectively to

---

**6.** In our circuit and others, discriminatory discharge cases prior to *Patterson* were actionable under section 1981. *See, e.g., Estes v. Dick Smith Ford*, 856 F.2d 1097, 1100–01 (8th Cir. 1988); *Williams v. Trans World Airlines, Inc.*, 660 F.2d 1267, 1268 (8th Cir.1981); *Person v. J.S. Alberici Constr. Co.*, 640 F.2d 916, 918–19 (8th Cir.1981). *See also Gonzalez v. Home Ins. Co.*, 909 F.2d 716, 722 (2d Cir.1990), and *Gersman v. Group Health Ass'n, Inc.*, 975 F.2d 886, 909–11 (D.C.Cir.1992).

**7.** *See* Kenneth J. Kress, *Legal Reasoning and Coherence Theories: Dworkin's Rights Thesis, Retroactivity, and the Linear Order of Decisions*, 72 Cal.L.Rev. 369, 399 (1984).

**8.** The majority cites *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), for the proposition that the *Bradley* presumption of retroactivity should be limited by the "venerable rule of statutory interpretation …

that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Id.* at 639, 105 S.Ct. at 1560. I think *Bennett* must be read more broadly. Justice O'Connor went to great lengths in that opinion to point out that if the statute there in question were applied retrospectively, the reasonable expectations of the parties would be thwarted. She considered the practical consequences that would arise with retrospective application. In the present case, it is the practical consequences of *prospective* application that will thwart reasonable expectations: the Brown Group will not be held responsible for an action that clearly was illegal at the time it was committed (and is illegal again under current law), and Hicks will be deprived of the benefits of a law that was clearly in existence at the time he was discharged.

the facts in this case must inexorably follow.[9] Not only had the Brown Group had been on notice before 1982 that it could not discharge employees because of their race,[10] but as Judge Wald notes, "[w]hen the 'new' law is nothing more than a reenactment of the law that governed the relevant conduct at the time it occurred, there is no 'manifest injustice' in applying the new law to the past conduct, even where an intervening Supreme Court opinion redefined the substantive law." *Gersman*, 975 F.2d at 908.

I agree with my colleagues that Congress left it for the courts to decide the question of "retroactivity." They did so because proponents, although in the majority, did not have the votes to override a threatened presidential veto. It is clear from the legislative history of the 1991 Civil Rights Act and from the language of section 101 that Congress intended to overrule *Patterson*.[11] Moreover, the original 1990 act contained a specific "super-retroactivity" provision that would have applied to all proceedings pending on or commenced after June 15, 1989, including cases in which a final judgment already had been entered before the effective date of the act. "The fact that the President vetoed this version (and that a two-thirds majority was unavailable to override) tells us nothing about the congressional intent concerning application of section 101 to cases pending on November 21, 1991." *Gersman* at 912

(Wald, J., dissenting). In his veto message to Congress, the President noted that he relied on the attorney general in vetoing the 1990 act for retroactivity reasons. Significantly, however, the attorney general's objection to the retroactivity provisions of the 1990 act was not that they applied the act to pending cases, but that they applied it to cases already decided.[12]

I recognize that this is an unsettled area of the law and that courts that have considered whether the act is retrospective have come down on both sides of the issue. Yet the majority's analysis of the act's legislative history strains the bounds of credible statutory interpretation. It is disingenuous to suggest that Congress clearly intended the act to operate only prospectively. It is equally disingenuous to suggest that, unless we rule in favor of the Brown Group, we are undertaking "the essentially legislative task of adopting 'unwieldy distinctions between classes of litigants based on the degree to which they relied on the legal regime antedating' the 1991 Act." *Supra*, at 298. Regardless of how we rule today, we are filling a gap in the 1991 act on which Congress could not agree, and fully intended we fill. The only question is whether we come down on the side of the reasonable expectations of both of the parties at the time of the disputed conduct, or on the side of a party that is seeking to avoid its responsibility to make racially neutral discharge decisions. I believe the

9. In *Bradley*, the Court tempered its presumption of retroactivity with an exception for cases in which retroactivity would result in "manifest injustice." 416 U.S. at 711, 94 S.Ct. at 2016. It noted Justice Marshall's admonition in *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801) that courts must "struggle hard against a construction which will, by a retrospective operation, affect the rights of the parties." 416 U.S. at 717, 94 S.Ct. at 2019. Here, no manifest injustice results because the Brown Group will only be required to do that which it was required to do at the time of the discharge.

10. *See, e.g.,* Estrin, *supra,* at 2074 ("Since Title VII was enacted, employers have been on continual notice that discriminatory practices are subject to lawsuits.").

11. *See* H.R. 1, 102d Cong., 1st Sess. (1992) (stating that section 12, which is nearly identical to the language of section 101 of the Civil Rights Act of 1991, "shall apply to all proceedings pending on or commenced after June 15, 1989." [*Patterson* was decided on June 15, 1989.]); H.R.Rep. No. 40(II), 102d Cong., 1st Sess. (1991) ("H.R. 1 applies retroactively to certain provisions overturning Supreme Court cases.... The retroactive sections are: ... 12 (overturning *Patterson*)"; and Estrin, *supra,* at 2053–54 (summarizing the legislative history).

12. The Attorney General's only objection to the retroactivity provisions of the 1990 act was that section 15 "unfairly applies to changes in the law made by S. 2104 to cases already decided." Memorandum from Dick Thornburgh, Attorney General, to George Bush, President of the United States 10 (Oct. 22, 1990).

majority comes down on the wrong side, and therefore dissent.