**Robert Earl McCOY, Petitioner,**

v.

**Larry NORRIS, Director, Arkansas Department of Corrections, Respondent.**

No. PB–C–96–202.

United States District Court, E.D. Arkansas, Western Division.

Nov. 26, 1996.

Robert Earl McCoy, Tucker, AR, Pro Se.

Timothy O. Dudley, Little Rock, AR, for plaintiff.

Joseph V. Svoboda, Arkansas Attorney General's Office, Little Rock, AR, for defendant.

## MEMORANDUM OPINION AND ORDER

EISELE, District Judge.

Before the Court is Petitioner Robert Earl McCoy's petition for a writ of *habeas corpus,* filed pursuant to 28 U.S.C. § 2254. That petition was referred to United States Magistrate Judge H. David Young, and the Magistrate Judge has presented his Findings and Recommendation to the Court, suggesting that the Court deny the petition. Petitioner has filed objections to the Magistrate Judge's Findings and Recommendation, and Respondent has submitted a response to the objections. The Court has reviewed the submissions of the parties and disagrees with the Magistrate Judge's recommendation. The Court concludes that Petitioner is entitled to *habeas* relief, and his petition, therefore, will be granted.

In 1986, Petitioner waived his right to a trial by jury and was tried and convicted in Pulaski County Circuit Court on the charge of rape. The trial took less than half a day. At trial, the alleged victim testified that Petitioner somehow gained entry into her apartment and raped her. Petitioner testified that he had been admitted into the apartment by the alleged victim and that she had consented to having sex with him. The details of the case have been set out in the opinions rendered previously in this matter, and there is no need for the Court to recite them again here. Suffice it to say that the Circuit Judge believed the testimony of the alleged victim and discredited Petitioner's testimony, citing Petitioner's past crimes involving dishonesty. The Circuit Judge sentenced Petitioner to forty years' imprisonment. The Court is respectful of the fact that its function at this point is not to review the soundness of the state court's decision, and it will not do so. Still, it is important to examine the entire state record and transcript to fully understand the issues.

Petitioner's direct appeal was unsuccessful, *see McCoy v. State,* 293 Ark. 49, 732 S.W.2d 156 (1987), and the Arkansas Supreme Court denied Petitioner's request for permission to file for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure.

This case involves a successor *habeas* petition, filed on April 14, 1996.[1] In Petitioner's first § 2254 proceeding, the Magistrate Judge, following a remand from the United States Court of Appeals for the Eighth Circuit, *see McCoy v. Lockhart,* 902 F.2d 1573 (8th Cir.1990), and an evidentiary hearing, entered a Memorandum and Order on July 18, 1991, granting Petitioner's request for *habeas* relief on his claim of ineffective assistance of counsel. The Magistrate Judge found that, although Petitioner's Sixth Amendment claim of ineffective assistance of counsel had been procedurally defaulted, Petitioner had met the standard for "actual innocence" set forth in *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That showing allowed Petitioner to overcome the procedural bar. The Magistrate Judge, therefore, reached the merits of Petitioner's Sixth Amendment claim, and he found that Petitioner was entitled to relief.

The Eighth Circuit reversed and remanded. That court instructed the Magistrate Judge to reevaluate Petitioner's showing of actual innocence under the standard that had been recently announced by the Supreme Court in *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (requiring a clear and convincing showing of actual innocence). *See McCoy v. Lockhart,* 969 F.2d 649 (8th Cir.1992), *cert. denied,* 509 U.S. 930, 113 S.Ct. 3056, 125 L.Ed.2d 739 (1993). Following that remand, the magistrate judge entered a second Memorandum and Order, on August 21, 1992, finding that Petitioner could not overcome the procedural bar under the *Sawyer* standard. The Eighth Circuit affirmed, and that disposition ended Petitioner's first attempt at *habeas* relief. *See McCoy v. Lockhart,* 980 F.2d 1162 (1993).

Almost two years later, the United States Supreme Court decided *Schlup v. Delo,* holding that the *Carrier* standard of actual innocence, rather than the *Sawyer* standard, should govern cases such as this case, where the petitioner attempts to overcome a procedural bar by a showing of factual "actual innocence." 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In light of that decision, Petitioner filed his present § 2254 petition. He argues that the return to the standard under which he was originally granted *habeas* relief entitles him to relief now. The Magistrate Judge disagrees and, in his Findings and Recommendation, suggests that Petitioner has not satisfied the *Carrier* standard for a showing of actual innocence, *as that standard was explained in Schlup.* The Magistrate Judge, therefore, recommends that the Court dismiss Petitioner's Sixth Amendment claim as procedurally barred.[2]

■ Petitioner faces two initial hurdles in having the Court hear his claim of ineffective assistance of counsel. First, his petition is successive. As the Magistrate Judge noted, "[i]n *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (plurality opinion), the Supreme Court indicated that the 'ends of justice' require federal courts to entertain successive petitions only where the petitioner makes a colorable showing of factual innocence." Second, Petitioner has procedurally defaulted his claim by failing to raise it in state court. To avoid dismissal of a claim not raised below, Petitioner must demonstrate cause and prejudice for the failure to raise the claim previously. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *McCleskey v.*

---

1. The Court is aware of the restrictions imposed upon successor § 2254 petitions by § 106 of the recently enacted Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–32, 110 Stat. 1214, § 106 (April 24, 1996). This petition, however, was filed prior to the enactment of that legislation, and that legislation does not state that the revisions of § 106—as opposed the revisions of § 107—are to be applied either retroactively or to cases pending at the time of its enactment. Accordingly, the Court need not consider what effect, if any, the amendments of § 106 might have in this case. *See Warner v. United States,* 926 F.Supp. 1387, 1390 n. 4 (E.D.Ark.1996); *see also Landgraf v. USI Film*

*Prod.,* 511 U.S. 244, 265–81, 114 S.Ct. 1483, 1497–1505, 128 L.Ed.2d 229 (1994) (indicating that statutes must be construed to operate prospectively unless Congress manifests a clear intent to the contrary); *Hicks v. Brown Group,* 982 F.2d 295, 297–98 (8th Cir.1992) (*en banc*) (same), *cert. denied,* 511 U.S. 1068, 114 S.Ct. 1642, 128 L.Ed.2d 363 (1994).

2. Judge Young also recommends that Petitioner be denied relief on his other claims, also on procedural grounds. Given that the Court reaches and grants relief on Petitioner's ineffective assistance of counsel claim, the Court does not need to address these other issues.

*Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). As the Magistrate Judge indicated, "[t]here is one extraordinary circumstance where a federal habeas court may grant relief without a showing of cause; where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. Thus, a showing that Petitioner satisfies the *Carrier* standard, as elaborated upon in *Schlup,* would entitle Petitioner to have his successive claim heard and, coupled with a constitutional violation, would excuse his procedural default. Petitioner has made the requisite showings, and, for the reasons discussed below, the Court finds that it should hear the successive petition and excuse Petitioner's procedural default.

■ *Carrier* provides that procedural default will not bar *habeas* relief where a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup* explains that standard as requiring Petitioner to show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513 U.S. at 327, 115 S.Ct. at 867. The word *reasonable* in the phrase *no reasonable juror* requires the Court to stand in the shoes of an objective individual who "would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." A credible claim of actual innocence involves the petitioner's supporting his constitutional claims with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324, 115 S.Ct. at 865. The Court "is not bound by the rules of admissibility that would govern at trial" and should "consider the probative force of relevant evidence that was either excluded or unavailable at trial." *Id.* at 328, 115 S.Ct. at 867. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.*

■ The Magistrate Judge concluded that, although Petitioner showed that he is probably actually innocent under *Carrier,* he had not shown that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt under *Schlup.* The Court fails to understand the benefit to be gained from attempts to distinguish these two standards, particularly in light of the fact that this debate takes place while Petitioner sits in jail for a crime of which, as the Magistrate Judge concluded, he is probably actually innocent. It is unclear to the Court how one goes about determining that it is not probable that no reasonable individual would convict a defendant who was probably actually innocent. In the eyes of the Court, the standards articulated in *Carrier* and *Schlup* lead inexorably to the same conclusion. The Magistrate Judge, however, writes that "the new evidence (the 'window-entry evidence') related to the means of entry to the victim's apartment and reflected on the victim's credibility, but it did not *preclude* a jury from finding petitioner guilty of rape, regardless of the means of entry" (emphasis added). The *Carrier–Schlup* doctrine, however, does not require a showing that a jury *could not* have convicted the defendant. Rather, that doctrine demands that a petitioner show that it is *likely* that no *reasonable* juror *would* have convicted the defendant beyond a reasonable doubt. This Court declines to hold that it is not probable that a reasonable person would find reasonable doubt where a defendant is probably actually innocent. Announcing such a rule would evidence little faith in our criminal justice system. The Court believes, rather, that no reasonable juror would vote to convict a defendant beyond a reasonable doubt who was probably innocent.

When the Magistrate Judge, after an evidentiary hearing, ruled on Petitioner's first *habeas* petition, he wrote as follows:

When counsel was appointed to represent the petitioner, counsel was told by the petitioner that the victim had given him a key to her apartment, but that the victim had subsequently admitted the petitioner into her apartment without the necessity of

this key. The petitioner, upon his release on bond, was able to produce a key, which counsel and an investigator with the public defender's office took to the apartment complex to investigate petitioner's explanation. The apartment manager, Versie Winstead, was unable to positively identify the key as *the* apartment key in question, but she did confirm that it looked like one of the keys used at the apartment complex. Because the victim's family immediately moved out of the apartment complex after the alleged rape, the apartment locks were changed in accordance with Ms. Winstead's customary procedure. The key and lock could, therefore, not be positively linked to each other.

The state's theory of the case included petitioner's alleged entry into the victim's apartment through a bedroom window. In an attempt to rebut the suggestion that the petitioner gained access to the victim's apartment through a bedroom window, Ms. Winstead was called as a witness at petitioner's trial, and she testified that the records maintained at her complex revealed that the screen on that particular window was not deemed damaged in the inspection report. [Footnote omitted.] Petitioner's counsel focused upon the absence of a damage report regarding the window, but the prosecutor brought this evidence into criticism by gaining Winstead's admission that "pry marks" (which the police report noted) would not necessarily be reflected in the inspection report. Ms. Winstead volunteered during cross-examination by the prosecutor, however, that the windows could not be "pried open" without removing and damaging the screen. Counsel for petitioner failed to follow up on this revelation, and as will be seen, *infra*, counsel also, importantly, failed to call a key witness that could have substantially bolstered this revelation by Ms. Winstead. It would appear from the record before the trial court that the significance of this fact (inability to remove the screens without causing permanent damage) was lost upon both petitioner's counsel and the trial court. Not only did counsel fail to completely develop the facts concerning the improbability of window en-

try into the victim's apartment, the court stated that it wasn't concerned with how entry was gained. Given the consent issue raised, the mode of entry by petitioner was absolutely critical in resolving the credibility dispute between petitioner and the victim over the issue of consent. By ignoring this entry issue, the court . . . was left with the prospect of resolving a credibility dispute between the alleged victim and the petitioner, an ex-convict. Not surprisingly, after a trial that took less than half a day, the petitioner was found guilty.

Had counsel explored this "entry" prong of petitioner's consent defense, he would have discovered that the maintenance supervisor at the apartment complex for over ten years, Luther Rollins, could have testified that a screen could not be removed from the window by a person on the outside of the apartment complex without doing permanent damage to the screen. With regard to this case, petitioner would have been unable to gain entry by removal of the screen without causing permanent visible damage to the screen. Mr. Rollins brought to the habeas hearing the same window and screen unit which had been in place on the subject apartment window continuously for at least his tenure as maintenance supervisor, and he testified from personal knowledge that the screen had not been repaired during this time. This testimony compellingly supports petitioner's argument that he did not gain entry to the apartment through this window, and by virtue of other evidence in the case, leads one to conclude that the doorway was the likely point of entry. This, of course, lends considerable support for petitioner's consent defense. Did counsel's failure to fully develop and present this evidence constitute ineffective assistance of counsel?

In order to prove ineffective assistance of counsel, petitioner must prove that (1) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that but for counsel's unprofessional errors, the result of the trial would have been different.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983); *Ryder v. Morris,* 752 F.2d 327, 331 (8th Cir. 1985). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Kellogg v. Scurr,* 741 F.2d 1099, 1101 (8th Cir.1984); *Bell v. Lockhart,* 741 F.2d 1105, 1106 (8th Cir.1984). This presumption is created to "eliminate the distorting effects of hindsight," and recognizes that "it is all too easy for a Court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Ryder,* 752 F.2d at 331.

In this case, counsel performed unreasonably when he relied solely upon Ms. Winstead's testimony to buttress petitioner's consent defense. All counsel established with her testimony was that an inspection report reflected no damage to the screen and window at issue. Ms. Winstead, however, admitted to the prosecutor that this report wouldn't rule out the presence of "pry marks," as was contained in a police report. Counsel's failure to fully investigate the window construction and to discover the strong testimony which the maintenance supervisor, Mr. Rollins, could provide cannot be dismissed as trial strategy. *See Henderson v. Sargent,* 926 F.2d 706, 711 (8th Cir.1991). There is no strategical explanation for not introducing Rollins' testimony that it was practically impossible to gain entry through one of these windows without causing permanent irreparable damage to the screen and that during his tenure (which included the relevant time period), the window and screen in question had never been so damaged and repaired. His testimony should not be dismissed as merely cumulative because Rollins was the individual directly involved in the actual maintenance of the apartments. He could have testified from personal experience.

It would have been very compelling evidence, indeed, if trial counsel had, as habeas counsel did, brought the actual window at issue into court and demonstrated the virtual impossibility of petitioner's having entered the victim's window as argued by the prosecution. Similarly, counsel's failure to introduce the key cannot be dismissed as trial strategy.

The key was available and could have been introduced, at least through petitioner's testimony. Respondent's dismissal of the significance of this error as trial strategy is not persuasive. Trial counsel's professed surprise at petitioner's trial testimony describing his permissive entry through the apartment door by the victim despite his possession of the key does not reasonably lead to the conclusion that the key had no evidentiary value to the defense. Petitioner had consistently maintained that the victim admitted him into her apartment even though she had earlier given him a key. This entry did not contradict the petitioner's testimony that he was given a key, and provided circumstantial proof in support of petitioner's overall consent defense. Counsel had no reasonable basis for failing to introduce the key into evidence. Counsel's failure to pursue the "key components" of the consent defense, as well as Rollins' testimony can be explained only in terms of failure to fully investigate and prepare petitioner's defense. *See Eldridge v. Atkins,* 665 F.2d 228, 232 (8th Cir.1981)....

... [B]efore a defendant can be required to forfeit his liberty for forty years, the Constitution required a more searching investigation and review of the facts than was had in this case. The Court concludes that a fundamental miscarriage of justice resulted in this case and that, had the facts [footnote omitted] as set forth above been investigated and presented to a rational trier of fact, a different result would have occurred. *Henderson v. Sargent, supra* at 714.

The Court believes that the Magistrate Judge's disposition of this matter on July 18, 1991, was correct, and the Court disagrees that *Schlup* requires a different result. Petitioner has shown that a violation of his constitutional right to the effective assistance of

counsel caused his conviction in spite of the fact that he is probably innocent of the crime. Petitioner's petition for a writ of *habeas corpus*, therefore, will be, and it is hereby, GRANTED. The state is directed to initiate proceedings to retry Petitioner within ninety days of the entry of this Order or to release him from custody on the challenged rape conviction.