**Virgil F. RYDER, Appellant,**

v.

**Terry MORRIS, Superintendent, Moberly Training Center for Men, Appellee.**

No. 83–2529.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1984.

Decided Jan. 11, 1985.

Rehearing and Rehearing En Banc Denied Feb. 7, 1985.

Springfield Baldwin, St. Louis, Mo., Court-appointed, for appellant Virgil Franklin Ryder.

John Ashcroft, Atty. Gen., Henry T. Herschel, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Virgil Franklin Ryder appeals from à final judgment entered in the United States District Court for the Eastern District of Missouri denying his petition under 28 U.S.C. § 2254 for habeas corpus relief. The district court dismissed the case without a hearing, holding that Ryder's claim he had been convicted of second degree murder on the basis of illegally seized evidence was barred from federal habeas review by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). For reversal, Ryder contends that in the circumstances of this case (1) the district court's reliance on *Stone v. Powell* was misplaced; and (2) his sentence was based on an erroneous presentence report, in violation of his rights under the fifth, sixth, and fourteenth amendments. We conclude the district court did not err in holding Ryder's conviction had been constitutionally obtained; however, we remand for hearing in the district court of Ryder's challenge to the legality of his sentence.

In the early morning of May 15, 1977, Wanda Wykoff sustained what later proved to be a fatal gunshot wound to the head. Earlier in the evening, Wykoff had accompanied Ryder to a dance; Ryder had been drinking heavily. The shooting occurred in the two story apartment Wykoff shared with Ryder.

After Wykoff had been shot, Ryder contacted a telephone operator, and asked that she summon an ambulance. Police arrived on the scene first; they found Ryder's door open, and Ryder, with his back to the door, bending over Wykoff, who was lying at the base of the apartment's staircase. Without any specific invitation from Ryder, police entered, seizing a gun that was lying on or near Wykoff. Although Ryder was not formally arrested, several officers insisted that he accompany them to the police station, give them a written statement, and undergo gunshot residue and breathalyzer tests. Ryder's statement apparently indicated that Wykoff had shot at him from the top of the stairs as he walked down, and then had shot herself.

At varying times after the police entered Ryder's apartment, they seized the following items: a gun box; two spent shells; one live round; two "projectiles"; three pieces of wallboard bearing marks of projectile impact; and the watch and shirt Ryder had been wearing. These items were found in various rooms on both the first and second floors. Later, the items were offered into evidence by the prosecution when Ryder was tried in the Circuit Court of Warren County, Missouri for second degree murder of Wykoff. At trial, Ryder relied on a defense of suicide; his attorney did not object to the admission into evidence of the items seized from the apartment. The jury found Ryder guilty of second degree murder.

After the verdict had been returned, and in the presence of Ryder and his attorney, the trial judge indicated a presentence investigation would be ordered. There were no objections. Subsequently, Ryder was sentenced to sixty-five years of imprisonment. At the sentencing hearing, the trial judge mentioned that he had received the presentence report, but did not question Ryder or Ryder's attorney about matters contained in the report. Apparently, neither Ryder nor his attorney actually saw the report until two years later.

*I. Illegal Search*

Ryder contends that police violated his fourth amendment rights by searching his apartment without having first obtained a warrant. He further contends that the prosecutor should not have been permitted to introduce the fruits of that search into evidence against him; and also that his trial attorney had provided ineffective assistance in failing to challenge the admissibility of the physical evidence.

■ With regard to Ryder's fourth amendment claim, the district court held:

The United States Supreme Court in *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037 [3046] 49 L.Ed.2d 1067 (1976) held that "where the state has provided an opportunity for full and fair litigation

of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" .... Thus, the issue before this court is whether petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts of Missouri.

The opportunity for a full and fair hearing was clearly present in this case. Missouri law recognizes the invalidity of illegally seized evidence at trial, Missouri Constitution, Article I, § 15, and judicial remedies are available to litigate such claims. *State v. Overstreet*, 551 S.W.2d 621 (Mo. banc 1977), *State v. Peterson*, 583 S.W.2d 277 (Mo.App.1979). Petitioner's claim was in fact considered by the trial court [when that court passed on a motion Ryder had filed for post-conviction relief under Mo.R.Civ.P. 27.26]. A full evidentiary hearing was held pursuant to this motion, and evidence on petitioner's claim was presented. Therefore, since petitioner was afforded the opportunity to fully and fairly litigate his Fourth Amendment claim, his claim is not a cognizable ground for relief in a federal habeas action.

We agree with the district court's reasoning.

Ryder, however, makes the following arguments that his opportunity to raise the fourth amendment claim in Missouri courts was less than full and fair: (1) the 27.26 trial judge erroneously placed the burden on Ryder to demonstrate that the search had been unconstitutional; (2) the state judge who heard his 27.26 motion showed "personal bias" by making a baseless finding Ryder had consented to the search; (3) the prosecutor "put words in Ryder's mouth" during cross-examination at the 27.26 hearing; (4) the 27.26 hearing did not fully develop the facts relevant to the legality of the search; and (5) no Missouri appellate court has addressed Ryder's fourth amendment claim.

We must reject the above arguments. We believe the propriety of the 27.26 judge's allocation of the burden of proof is a matter the *Stone* decision excluded from federal habeas review. *See Stone v. Powell*, 428 U.S. at 493 n. 35, 96 S.Ct. at 3052 n. 35; *Lenza v. Wyrick*, 665 F.2d 804, 808–09 (8th Cir.1981) (even if federal court disagrees with state court's resolution of fourth amendment issue, and with state appellate court's reliance on state procedural rule to avoid reaching fourth amendment issue, federal court may not review issue under 28 U.S.C. § 2254). Even assuming that *Stone* would not preclude consideration of the other arguments suggested by Ryder, we must reject those arguments also. The 27.26 judge did not make a formal finding of fact that Ryder had expressly consented to the search, and we see no indication of bias. Moreover, testimony presented at the 27.26 hearing was sufficient to enable the judge to rule on the legality of the search—it described the circumstances of the entry and search by the police, and also indicated that not all items seized had been in plain view. In addition, we have no doubt that if indeed the prosecutor "put words in Ryder's mouth" at the hearing, the state judge who presided at the hearing was in the best position to determine this, and to evaluate Ryder's cross-examination testimony accordingly. Finally, although *Stone v. Powell* requires that the state provide "an opportunity for a full and fair hearing" of fourth amendment claims, we cannot say that this requirement is satisfied only in those cases in which a state appellate court has actually addressed the fourth amendment issues. *See Brunson v. Higgins*, 708 F.2d 1353, 1360–61 (8th Cir.1983). We conclude *Stone v. Powell* bars review of Ryder's fourth amendment claim.

As noted, Ryder also raises his allegations of illegal search and seizure in the context of an ineffective assistance of counsel claim. There may be some doubt as to whether *Stone* bars federal habeas corpus review based upon sixth amendment claims. *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir.1984); *Hall v. Iowa*, 705

F.2d 283 (8th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983); *Li Puma v. Commissioner,* 560 F.2d 84, 93 n. 6 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977); *Sallie v. North Carolina,* 587 F.2d 636, 640–41 (4th Cir.1978), *cert. denied,* 441 U.S. 911, 99 S.Ct. 2009, 60 L.Ed.2d 383 (1979). Thus, we will address Ryder's allegations that his attorney was ineffective in failing to prevent·the fruits of the search from being admitted into evidence.

The Supreme Court held recently that a convicted defendant claiming counsel's assistance was so defective as to require reversal of the conviction must show (1) that the errors counsel made were so serious "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) that the errors were so prejudicial to the defendant there is a "reasonable probability" they changed the result of the trial. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). *Strickland* cautioned that judicial review of an attorney's performance should be "highly deferential," and should take into account the "distorting effects of hindsight," the "wide range of reasonable professional assistance," and "the presumption ... the challenged action 'might be considered sound trial strategy.' " 104 S.Ct. at 2065, 2066 (citations omitted).

■ Ryder has failed to make either of the showings required by *Strickland.*[1] At the 27.26 hearing, Ryder's trial attorney testified that he had believed the physical evidence to be fairly consistent with Ryder's version of events, and that he had felt any attempt to keep the evidence from the jury would have appeared inconsistent with the defense. The record shows that the judgment Ryder's attorney made on this matter of trial strategy was reasonable, and that little, if any, prejudice to Ryder resulted. For example, although Ryder's shirt and watch, which were. seized during the search and later admitted into evidence, were stained with blood, this was consistent with Ryder's allegation that Wykoff had fallen down the stairs on top of him. Testimony at trial indicated that neither the shirt nor the watch had yielded positive results when tested for gunshot residue. As Ryder admits, the gun itself would have been admissible in any event under the plain view exception to the warrant requirement. Both sides contended in closing argument that the wallboard markings were more consistent with their respective versions of the shooting. The gunshot residue test of Ryder's hands were negative; and although it showed Ryder had washed his hands prior to the test, a police officer testified he had instructed Ryder to wash up. In short, counsel's decision not to present any fourth amendment arguments to the trial court was not violative of Ryder's sixth amendment rights.

## II. Presentence Report

We find more disturbing Ryder's contention that he was sentenced on the basis of an erroneous presentence report. Among other materials contained in the report and now challenged by Ryder is the following:

> According to a statement made by one of Ryder's sons he (Ryder) was responsible for his wife's death. Ryder reportedly carried a gun, pistoled [sic] whipped his wife and on one occasion shot at her and then she ran into the street fleeing him and was hit and killed by a truck.

Ryder tenders several affidavits to this court, indicating that his wife is still alive.

1. Although the state decision denying Ryder's 27.26 motion addressed and rejected Ryder's claim that counsel had been ineffective in failing to raise the fourth amendment issues, that decision appears not to be binding on us for purposes of 28 U.S.C. § 2254(d). Questions of ineffectiveness of counsel, and of the performance and prejudice components supporting an ineffective assistance claim, are mixed questions of law and fact. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Although "state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d)," 104 S.Ct. at 2070, to the extent the state court's brief discussion of the matter presently at issue contains findings of fact, such findings are entirely consistent with our analysis.

He contends that his sentence was violative of his fifth, sixth, and fourteenth amendment rights.

 A trial court has wide discretion in making a sentencing determination; but sentences based on material misinformation or erroneous assumptions may violate due process. *United States v. Catch the Bear*, 727 F.2d 759, 761 (8th Cir.1984); *United States v. Papajohn*, 701 F.2d 760 (8th Cir.1983).

Ryder did not present his challenge to the presentence report to the district court. He did, however, present the claim to the state court in which he had been sentenced, as part of his 27.26 motion for post-conviction relief. The 27.26 court excluded the affidavits as hearsay,[2] and rejected the claim. The state court reasoned that the burden of proving a right to relief was on Ryder; that Ryder had offered no proof, other than his own testimony, that the report was untrue; and that Ryder had failed to make any showing the sentencing judge had relied on the report. The Missouri Court of Appeals, 657 S.W.2d 64, affirmed denial of the 27.26 motion.

 Although Ryder's past record, even discounting the charges he disputes as untrue, is far from spotless, at this juncture we think the allegation that Ryder, in effect, was responsible for the death of his wife, was serious enough to be at least rebuttably presumed to have affected the trial judge's sentencing decision. *Cf. Grant v. White*, 579 F.2d 48, 49 (8th Cir. 1978) (in which this court required resentencing where the record indicated an invalid juvenile adjudication may have influenced the sentencing judge). If the report is untrue, and if there was no opportunity afforded Ryder or his attorney to rebut the inaccuracies, the sentence may be invalid. *Orner v. United States*, 578 F.2d 1276, 1279 (8th Cir.1978); *United States v. Neal*, 527 F.2d 63, 67 (8th Cir.1975), *cert. denied*,

429 U.S. 845, 97 S.Ct. 125, 50 L.Ed.2d 116 (1976). If, on the other hand, Ryder's attorney failed to avail himself of opportunities to discover the substance of the report, and to develop and present rebuttal material, either at the sentence hearing or the 27.26 hearing, or to advise Ryder of the necessity of presenting exculpatory evidence, it is possible that Ryder received ineffective assistance of counsel. *Holtan v. Parrat*, 683 F.2d 1163 (8th Cir.), *cert. denied*, 459 U.S. 1225, 103 S.Ct. 1231, 75 L.Ed.2d 466 (1983). *Cf. Carpenter v. United States*, 720 F.2d 546, 547–48 (8th Cir. 1983). As the Supreme Court indicated in *Strickland v. Washington*, counsel has "the overarching duty to advocate the defendant's cause ... to consult with the defendant on important decisions ... to keep the defendant informed of important developments," and to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 104 S.Ct. at 2065, 2066.

 Counsel for appellee correctly point out that issues not raised in the district court should not be considered on appeal absent a showing of manifest injustice and that the record before us does not provide basic facts essential to decision. We quite agree. As a general rule, a federal appellate court does not consider issues not raised below; however, there are exceptions to the rule, including some cases where injustice might otherwise result. *United States v. Glass*, 720 F.2d 21, 23 (8th Cir.1983) *quoting Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). In view of the concerns outlined above, we think that this is the type of case in which it would be fundamentally unfair completely to preclude further consideration of the newly presented issue.

 Accordingly, while we hold that the district court correctly resolved the is-

---

**2.** Where, as here, a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come," *United States v. Tucker*,

404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), it would seem anomalous that exculpatory evidence offered by the defendant should be excluded as hearsay. *Cf. United States v. Needles*, 472 F.2d 652, 658 (2d Cir.1973).

sues presented to it, we remand for determination of Ryder's challenge to the constitutional validity of his sentence proceeding and related post-conviction proceeding. On remand the court may, of course, conduct such hearings as may be necessary, appoint counsel if necessary, and otherwise proceed not inconsistently with this opinion.

Should the district court conclude that Ryder's sentencing was in violation of the federal Constitution, and if the State of Missouri thereafter does not within a reasonable time to be fixed by the district court conduct a new sentence proceeding, the writ of habeas corpus shall issue. In the event of timely resentencing, the petition should be denied.