**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 97-1712

Pamela E. Armstrong,          *
                              *
        Appellant,            *
                              * Appeal   From   the   United
States
        v.                    * District Court for the
                              * Western   District   of
Missouri.
Aetna Life Insurance Company, *
Aetna Health Plan, Plan Administrator, *
                              *
        Appellees.            *

Submitted:  September 8, 1997
             Filed:   November 13, 1997

Before RICHARD S. ARNOLD, Chief Judge, and HEANEY and
BEAM, Circuit    Judges.

HEANEY, Circuit Judge.

        Pamela E. Armstrong appeals the district court's
grant of summary judgment in favor of Aetna Life
Insurance Company, Aetna Health Plan, and Plan
Administrator (collectively "Aetna") on Armstrong's claim
that Aetna wrongfully denied her benefits under a health
plan administered by Aetna and governed by the Employee
Retirement Security Income Act, 29 U.S.C. § 1001
("ERISA").  We affirm.

**I.**

In May 1993, Armstrong was diagnosed with leukemia. She underwent chemotherapy for the disorder after which the leukemia went into remission in October 1993. At the time, Armstrong had health-care coverage through a group health plan administered by Travelers Insurance Company. On May 1, 1995, Armstrong left her residence in Colorado, taking a job with a realtor in Kansas City. The realtor offered Armstrong a group health plan insured by Aetna. Aetna also administers the plan, and, by the terms of the health plan agreement, Aetna has the discretion to review claims. Armstrong transferred her coverage to the Aetna plan, becoming eligible for benefits under the plan on June 1, 1995.

On March 7, 1995, Armstrong visited Dr. Pamela Perry, a primary care doctor, to "get established with a new physician." After Armstrong informed Dr. Perry of her history of leukemia, Dr. Perry ordered a complete blood count, which was performed the next day. The test indicated a white blood count that Dr. Perry described as "abnormal" and " low." Based on the test results and Armstrong's medical history, Dr. Perry ordered a more detailed test called a "peripheral smear." On March 13, 1995, the smear evaluation confirmed that Armstrong's white blood cell count was low and showed that her blood cells were "atypical, but not leukemic." While Dr. Perry suggested no immediate action as a result of the test results, she encouraged Armstrong to return for a "well-woman examination" in September 1995.

Armstrong saw Dr. Mark Davidner, an oncologist, on June 15, 1995, two weeks after her Aetna coverage began. Dr. Davidner examined Armstrong, finding signs of

3

leukemia.  A bone marrow aspiration on June 27th resulted in a definitive diagnosis of leukemia.  Armstrong subsequently received treatment for leukemia through chemotherapy and a bone marrow transplant.

Armstrong sought coverage from Aetna for her leukemia treatment.  Aetna initially indicated that Armstrong's policy covered the treatment but subsequently limited her coverage based on the "preexisting condition" provision in the health plan.

The plan defines a preexisting condition as a condition that was diagnosed or treated, or for which treatment or services were received, or prescription drugs or medicines were prescribed or taken within 180 days of the date coverage became effective. (Appellant's App. at 92.) The plan limits benefits for treatment of a preexisting condition within the first year of coverage to $4,000. Armstrong appealed Aetna's determination that her claim fell under the preexisting condition limitation. Aetna reaffirmed its decision because Armstrong had received a service for leukemia within the previous six months when Dr. Perry conducted her examination of Armstrong.

Armstrong appealed Aetna's determination to the district court. Armstrong argued that the court should review Aetna's decision de novo because Aetna's role as both insurer and administrator of the plan created a conflict of interest. Moreover, she claimed that the incentives Aetna provided to its claim evaluators to deny benefits further justified heightened review by the court. Armstrong then argued that Missouri law should apply to her claim and that, under Missouri law, Aetna's preexisting condition provision is invalid. Armstrong alternatively argued that she did not have a "condition" within the meaning of the policy. The court determined that Aetna's decision was subject to an abuse-of-discretion standard, Delaware law applied to Armstrong's claim, and substantial evidence supported Aetna's decision that Armstrong had a preexisting condition. Armstrong appeals the district court's ruling and we affirm.

## A. Standard of Review

We review a decision by an ERISA plan administrator or fiduciary for an abuse of discretion if the plan specifically gives the administrator or fiduciary the authority to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, where the administrator or fiduciary has a conflict of interest or acts with an improper motive, that must be weighed as a "factor in determining whether there is an abuse of discretion." Restatement (Second) of Trusts § 187, Comment d (1959), quoted in Firestone Tire, 489 U.S. at 115. We have not addressed the appropriate standard for review where the insurer of a health benefits plan is also the plan administrator.[1] Other circuits have addressed this specific question. In Atwood v. Newmont Gold Company, 45 F.3d 1317, 1323 (9th Cir. 1995), and Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1566-67 (11th Cir. 1990), the Ninth and Eleventh Circuits adopted a "presumptively

---

[1]We have addressed the question of whether a variation of the abuse of discretion should apply where a "procedural irregularity" occurred in a plan administrator's determination of availability of benefits. See Wald v. Southwestern Bell Customcare Med. Plan, 83 F.3d 1002, 1007 (8th Cir. 1996); Buttram v. Central States S.E. and S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996). In those cases we held that for a heightened standard to apply, a plaintiff must show that the procedural irregularity caused the plan trustee to breach a fiduciary duty to the plan's beneficiary. Wald, 83 F.3d at 1007; Buttram, 76 F.3d at 900. Armstrong does not assert the existence of a procedural irregularity. Rather, she contends that Aetna has a conflict of interest as both the plan insurer and administrator and that Aetna's claim evaluators were biased by Aetna's financial incentives to reject claims.

void" test under which a decision rendered by a plan administrator with such a conflict is presumed to be an abuse of discretion unless the administrator can demonstrate that either (1) under de novo review the result was correct, or (2) the decision was not made to serve the administrator's conflicting interest. The Fourth, Fifth, Seventh, and Tenth Circuits use

a "sliding scale" approach, under which the reviewing court always applies an abuse-of-discretion standard but decreases the amount of discretion given to the administrator's decision in proportion to the seriousness of the conflict. See Chambers v. Family Health Plan Corp., 100 F.3d 818, 824-27 (10th Cir. 1996); Doe v. Group Hospitalization & Med. Serv., 3 F.3d 80, 87 (4th Cir. 1993); Wilbur v. ARCO Chem. Co., 974 F. 2d 631, 638-42 (5th Cir. 1992); Van Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1052-53 (7th Cir. 1987).

We hold that the circumstances of this case require us to review Aetna's decision to deny benefits de novo. We are informed by the reasoning of the Eleventh Circuit's holding in Brown, which stated that a relationship that places an ERISA benefits plan administrator in "perpetual conflict" warrants a higher level of scrutiny. Brown, 898 F.2d at 1561. Aetna faces a continuing conflict in playing the dual role of administrator and insurer of the health benefits plan. As the insurer, Aetna has an obvious interest in minimizing its claim payments. Apparently to limit claim payments, Aetna provides incentives and bonuses to its claims reviewers based on criteria that include a category called "claims savings." (Appellant's App. at 250-66). Despite Aetna's argument that there is no evidence that Aetna has directed its reviewers to improperly reject claims, we cannot view the fiduciary arrangement between Aetna, its claims reviewers, and the plan beneficiaries as the type ERISA provides as administered "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104 (a)(1).

**B.  Choice of Law**

8

Armstrong argued below that Delaware law applies to her claim. She now argues that Missouri law applies. Although we generally need not consider arguments raised for the first time on appeal, see Ryder v. Morris, 752 F.2d 327, 332 (8th Cir. 1985), we conclude that the district court properly determined that Missouri courts apply the law of the state in which a policy is delivered. See Miller v. Home Ins. Co., 605 S.W.2d 778, 780 (Mo. 1980). The evidence presented below demonstrates that

Aetna delivered the policy in Delaware. Therefore, Delaware law applies. An examination of the Delaware statute governing the treatment of preexisting conditions, 18 Del. Code § 3517 (a), reveals that the statute only applies prospectively from the statute's enactment, which occurred after the delivery of the Aetna health benefits plan, leaving the plan outside of the statute's reach. In the absence of a statutory directive invalidating the Aetna plan's preexisting conditions clause, the provision is construed based on its plain language.

## C. Aetna's Decision to Deny Benefits

We now turn to whether Armstrong is entitled to benefits. Armstrong contends that because her leukemia was in remission during the 180-day period prior to her coverage, she did not have a preexisting condition under the terms of the plan. Under the terms of the plan, however, if a plan participant receives treatment or a service for a condition within the 180 days prior to when coverage began, the plan limits benefits. Armstrong did not contest below, nor does she do so now, that the testing she received was a "service" within the meaning of the plan. Therefore, we accept that she received such a service. See Ryder, 752 F.2d at 332. Likewise, the parties do not dispute whether leukemia is a "condition" within the meaning of the plan.

The district court determined that sufficient evidence supported a finding that Armstrong had leukemia prior to the commencement of her coverage under the plan. Because that inquiry is not relevant under the terms of the plan, we need not consider the propriety of the

10

district court's conclusion.  Under the Aetna plan, a "preexisting condition" is a condition for which services or treatment were rendered within the 180-day period preceding coverage regardless of whether the condition manifested itself during that period.  Armstrong received a service for leukemia during the 180-day period, and leukemia is a condition under the terms of the plan.  She therefore is only entitled to benefits for the treatment of that condition as devised in the plan for a preexisting condition.

11

## III.

For the foregoing reasons, the decision of the district court to grant Aetna's motion for summary judgment and deny Armstrong's motion for summary judgment is affirmed.

BEAM, Circuit Judge, concurring and, in part, dissenting.

I concur in the result reached by the court. I disagree, however, with the conclusions reached in Part IIA of the opinion on the standard of review. Thus, in part, I dissent.

The holding "that the circumstances of this case require us to review Aetna's decision to deny benefits de novo" is, essentially, obiter dictum. <u>Ante</u> at 5. This is because under any standard of review the district court's decision must be affirmed given the interpretation we place on the words of the employer's plan insured by Aetna. Accordingly, we are not at all required to establish a review standard in this case and we should not do so under these particular circumstances since the issue appears to be a matter of first impression in this circuit.

Even assuming that our decision calls for the establishment of a standard of review, the de novo standard adopted is directly contrary to Supreme Court precedent established in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989).[2] The plan

---

[2]The conflict in <u>Firestone Tire</u> resulted from Firestone being both the sole source of funding for and the administrator of the ERISA plans at issue while in this case Aetna

12

at issue here specifically gives Aetna broad discretion to construe the terms of the plan. Absent any elements of a "conflict of interest," any review of Aetna's acts or decisions would be based upon an unconstrained "abuse of discretion" standard. Id. at 115. "Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest [as here], that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Id. (second alteration in original) (citation omitted). It is difficult, if not impossible, to read this language from Firestone Tire contrary to the "sliding scale" approach--under which the reviewing court always applies an abuse of discretion standard but decreases the amount of discretion given to the administrator's decision in proportion to the seriousness of the conflict-- established by the Fourth, Fifth, Seventh and Tenth Circuits. See Chambers v. Family Health Plan Corp., 100 F.3d 818, 824-27 (10th Cir. 1996); Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 87 (4th Cir. 1993); Wildbur v. ARCO Chem. Co., 974 F.2d 631, 638-42 (5th Cir. 1992); Van Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1052-53 (7th Cir. 1987).

I can find no other circuit that presently applies a de novo review under the circumstances of this or any similar case. In establishing this de novo standard, the court asserts that it is "informed" by the reasoning of

is both the benefits insurer and the plan administrator. For our purposes in applying Firestone Tire, this is a distinction without a difference. Indeed, since we know nothing of the premium arrangement between Armstrong's employer and Aetna, it is possible, if not likely, that Firestone had a more intense conflict of interest than does Aetna in this matter.

13

the Eleventh Circuit in <u>Brown v. Blue Cross & Blue Shield</u>, 898 F.2d 1556, 1561 (11th Cir. 1990). <u>Ante</u> at 5. It is somewhat difficult to understand how the court has processed information from <u>Brown</u> since the Eleventh Circuit said "[w]e therefore hold that the abuse of discretion, or arbitrary and capricious, standard applies to cases such as this one, but the application of the standard is shaped by the circumstances of the inherent conflict of interest." <u>Brown</u>, 898 F.2d at 1563. Indeed, the court also stated:

> While de novo review is an attractive avenue for controlling the exercise of discretion contrary to the interests of the beneficiaries, the application of this strict standard would deny Blue Cross the benefit of the bargain it made in the insurance contract.

14

<u>Id.</u>  In short, <u>Brown</u> does not support the proposition for which it is advanced by the court.  Indeed, no case that I have discovered does so.

Accordingly, while I concur in the result reached by the court, I disagree with its decision to establish a de novo standard of review for this circuit in this case of first impression.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.