SHEPHERD, Circuit Judge.
This case presents the issue of whether J.H., a student at Republic R-III School District, is eligible for special education benefits under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1482. After Republic’s administrative panel concluded that J.H. was not eligible, Larry Hansen, J.H.’s father, challenged the decision in the district court.[1] Hansen and Republic filed cross motions for judgment on the administrative record, which the district court resolved in favor of Hansen. Republic appeals the district court’s order, and we affirm.
I.
The administrative record reflects that J.H., a ninth-grade student at Republic, struggles socially and academically at school. He has been diagnosed with conduct disorder, bipolar disorder, and attention deficit hyperactivity disorder (ADHD). Since he began attending Republic in the fifth grade, J.H. has been suspended numerous times for threatening his classmates and teachers, has made suicidal comments on multiple occasions, and has consistently performed poorly in his classes and on standardized tests.
At the end of J.H.’s fifth-grade year, Hansen initiated proceedings under the IDEA seeking special education services for J.H. He made a formal request with Republic for an eligibility evaluation, and when Republic determined J.H. did not qualify, Hansen exercised his statutory right to challenge the decision at an administrative due process hearing. The hearing was conducted before Republic’s Due Process Panel. After Hansen presented his case, Republic elected not to offer evidence and, relying on Hansen’s submissions, moved for a directed verdict. The panel granted Republic’s motion and issued a one paragraph opinion, concluding as a matter of law that J.H. did not qualify for special education services under the IDEA. Hansen sought judicial review of the panel’s decision in the district court under section 1415(i)(2) of the IDEA. Both Hansen and Republic filed motions for judgment on the administrative record. Based on the evidence in the record, the district court held that J.H. was disabled as defined by the IDEA and thus eligible for special education benefits. Republic appeals, asserting that the district court erred in holding that J.H. meets the statutory definition of a “child with a disability” based on the facts in the administrative record and, alternatively, that the district court erred in failing to remand the case to the panel for additional proceedings sua sponte.
II.
Republic first argues that J.H. does not meet the statutory definition of a “child with a disability” based on the facts in the administrative record. The IDEA provides procedural safeguards to parents and guardians seeking to enforce a disabled child’s right to a “free appropriate public education.” See 20 U.S.C. *1026 §§ 1412(a)(1)(A), 1415. One of those procedural safeguards is the right to bring a civil action to challenge the result of a due process hearing conducted pursuant to the statute. Id. § 1415(i)(2). In lawsuits filed under section 1415(i)(2), the district court is required to receive the records of the administrative proceedings, hear additional evidence at the request of a party, and independently determine the appropriate relief based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C); Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1373 (8th Cir.1996).
Although the district court makes an independent determination as to the appropriate relief, it must give due weight to the factual findings of the administrative panel, Yankton Sch. Dist., 93 F.3d at 1376 n. 6, and refrain from substituting its own judgment as to educational policy for that of school authorities. Indep. Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 561 (8th Cir.1996). Here, however, the panel’s decision reflected neither factual findings nor educational policy decisions. The panel determined only that J.H. was ineligible for special education services as a matter of law based on the facts presented in Hansen’s case-in-chief. Moreover, the parties did not seek to present additional evidence to the district court and did not dispute the underlying facts as to J.H.’s diagnosis, symptoms, behavior, and academic performance. Instead, the parties filed cross motions for judgment on the administrative record, disputing only the legal conclusion to be drawn from the facts in the record. Accordingly, the district court was free to consider the panel’s legal conclusions de novo. See Marshall Joint Sch. Dist. No. 2 v. C.D., 616 F.3d 632, 636 (7th Cir.2010); Muller v. Comm. on Special Educ. of the East Islip Union Free Sch. Dist., 145 F.3d 95, 102 (2d Cir.1998). Likewise, we review the district court’s legal conclusion based on the administrative record de novo.[2] Pachl v. Seagren, 453 F.3d 1064, 1068 (8th Cir.2006).
In order to be eligible for special education services under the IDEA, a student must first be a “child with a disability” as defined in section 1401(3). The statute provides 13 categories of eligibility, and Hansen argues that J.H. meets the statutory definition of the “emotional disturbance” and “other health impairment” categories. 20 U.S.C. § 1401 (3)(A)(i).
We agree with the district court’s conclusion that J.H. meets the eligibility requirements for “emotional disturbance” under the IDEA. The Code of Federal Regulations provides that “emotional disturbance” means a condition exhibiting at least one of five listed characteristics “over a long period of time and to a marked degree that adversely affects a child’s educational performance.” 34 C.F.R. § 300.8(c)(4)(i). Children who are only “socially maladjusted” and fail to exhibit at least one of the five provided characteristics do not qualify. Id. § 300.8(c)(4)(ii). Hansen argues that J.H. suffers from bipolar disorder and exhibits an “inability to build or maintain satisfactory interpersonal relationships with peers and teachers,” which adversely affects his educational performance. Id. § 300.8(c)(4)(i)(B). Republic contends that J.H. is primarily socially maladjusted rather than emotionally disturbed.
Although this Circuit has not been called upon to define “emotional disturbance,” a Fourth Circuit case is informative. In Springer v. Fairfax County School Board, *1027 134 F.3d 659 (4th Cir.1998), the student at issue was found to be merely socially maladjusted rather than emotionally disturbed. The evidence showed that the student had progressed successfully from grade to grade, had maintained positive relationships with teachers and peers, and had participated in extracurricular activities until the eleventh grade when he began stealing, sneaking out of his house, skipping school, and using marijuana and alcohol. Id. at 661. At that point, the student continued to score in the average to superior range on standardized tests, but his grades suffered due to skipping class and failing to complete assignments. Id. Additionally, “the overwhelming consensus” among the psychologists who examined the student was that he did not suffer from an emotional disturbance. Id. at 665.
In contrast, J.H. received numerous disciplinary referrals over a four-year period for threatening students and teachers, fighting with other students, and treating his peers and teachers with disrespect. After working with J.H., Republic’s school-based mental health clinician, Peggy Defazio, described him as socially unsuccessful due to his limited social skills and terminated their relationship because he threatened her. Unlike the student in Springer who started to fail his courses because he skipped class and refused to turn in assignments but continued to perform above average on standardized tests, J.H. consistently struggled to pass his classes, failed the standardized test he was required to pass for advancement to the seventh grade, and suffered academically because of his diagnosed bipolar disorder.
In support of its argument that J.H. did not exhibit an inability to build or maintain satisfactory interpersonal relationships, Republic cites the testimony of its director of special services, Matt White, who stated that J.H. did well with some teachers but not well with others. However, White based his opinion on behavior reports and had no personal interactions with J.H.
We also agree with the district court’s conclusion that J.H. meets the eligibility requirements for “other health impairment” under the IDEA. The Code of Federal Regulations provides:
Other health impairment means having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that—
(i) Is due to chronic or acute health problems such as ... attention deficit hyperactivity disorder ...; and
(ii) Adversely affects a child’s educational performance.
34 C.F.R. § 300.8(c)(9). Hansen argues that J.H.’s inability to focus and hyperactive behavior results from ADHD and adversely affects his educational performance. Republic contends that the evidence does not support a conclusive diagnosis of ADHD and that a diagnosis of ADHD alone does not entitle J.H. to special education services.
We agree with the district court that the administrative record supports the conclusion that J.H.’s educational performance is adversely affected by ADHD. First, the record reflects that J.H. was diagnosed with ADHD. J.H.’s treating psychiatrist, Dr. Colby Wang, diagnosed ADHD and prescribed medication for the disorder. The psychologist who first evaluated J.H., Dr. Anna Hertel, and the school’s psychologist, Dr. Brian Petrovich, each gave a rule-out diagnosis[3] for ADHD. *1028 Defazio also found J.H.’s hyperactive, impulsive, and inattentive behavior to be consistent with ADHD.
Second, the record reflects that J.H.’s educational performance is adversely affected by ADHD. J.H.’s tutor, Renee Doubleday, testified that J.H. had difficulty focusing during tutoring sessions and that his concentration improved after J.H. began taking the ADHD medication prescribed by Dr. Wang. Defazio similarly found that J.H.’s hyperactive, impulsive, and inattentive behavior severely impaired his ability to learn. Further, J.H. initially failed the standardized test required for advancement to the seventh grade but passed when allowed to retake the test on ADHD medication. Although Republic correctly states that a diagnosis of ADHD alone does not entitle J.H. to special education services, it fails to cite any evidence in the record supporting the conclusion that ADHD does not adversely affect J.H.’s educational performance.
Republic alternatively argues that the district court erred in failing to remand the case to the panel sua sponte with instructions to make the factual findings that were absent from the panel’s initial decision. We decline to address this argument because it was raised for the first time on appeal. Ryder v. Morris, 752 F.2d 327, 332 (8th Cir.1985).
Based on the undisputed facts in the administrative record, J.H. meets the statutory definition of a “child with a disability” under the IDEA. Accordingly, we affirm the district court’s order granting Hansen’s motion for judgment on the administrative record.

. The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

. Although the parties assert that we review the district court’s findings of fact for clear error, the clear error standard of review is not implicated here because we review only the district court’s legal conclusion.

. A "rule-out” diagnosis, according to Dr. Hertel’s testimony, means the patient meets *1028 some criteria for the disorder, but the doctor needs more information to rule it out and would not be comfortable diagnosing it at that time. Dr. Hertel stated, “The rule-out does not mean the person does not have the disorder. When you give it as a rule-out, it means there’s a very good likelihood the person has the disorder.”