IKUTA, Circuit Judge,
dissenting.
Yang was admirably frank in letting many of his doctors and caregivers know that the only reason he was seeking mental health treatment was to strengthen his case to receive social security disability payments. Not surprisingly, the ALJ concluded that he was malingering and that his claims regarding the intensity of his symptoms were not credible. This conclusion was clearly supported by substantial evidence, that is, “ ‘such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’ ” Valentine v. Comm’r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir.2009) (quoting Desrosiers v. Sec’y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir.1988)). In holding otherwise, the majority not only casts aside our deferential standard of review, but also ignores the obvious.
The record is replete with evidence supporting the ALJ’s determination that Yang was malingering and his claims were not *207 credible. According to Dr. Sarah Morgan, a physician at the Fresno County mental health clinic Yang attended, Yang admitted that “the reason he came to [the mental health] program [was] to get more points for SSI because his lawyer told him so.” In addition, Yang’s treating psychiatrist, Dr. Wen Chu, indicated that he suspected Yang of malingering on at least three different occasions over the course of several years. For example, in December 2006, after noting that Yang was “applying for SSI” and “wants [me] to write a letter,” Dr. Chu concluded that Yang was “stable” and noted “R/O [rule out] malingering to get SSI.” In November 2007, Dr. Chu noted that Yang “has not been [taking] his med for 7 [months]” and that he was “applying for SSI and said he does not know what to do if he will not get it.” Dr. Chu again noted “R/O malingering to get SSI.” A “rule-out” notation means there is good evidence that the patient meets the criteria for that diagnosis, and the doctor needs more information to rule it out. See Hansen ex rel. J.H. v. Republic R-III Sch. Dist., 632 F.3d 1024, 1027 n. 3 (8th Cir.2011); United States v. Grape, 549 F.3d 591, 593 n. 2 (3d Cir.2008); Johns v. Jarrard, 927 F.2d 551, 555 n. 1 (11th Cir.1991). Finally, clinician Judye Johnson reported in May 2005 that although Yang “presented] himself alert and in a bright mood” and “agree[d] he is stable,” he expressed a “desire ... to stay in the program until he gets his SSI” because he feared discharge would negatively affect his application for disability benefits. Three months later, Johnson again reported that Yang “understands that he has met his goal of reducing his depression ... and he meets [the] criteria for discharge” but that he “requested his case be left open because of his current struggle to get SSI approved.” We have upheld the ALJ’s finding of malingering based on much less evidence than this. See Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir.2010) (“[T]he ALJ pointed to affirmative evidence of malingering, including that Berry reported that he wanted to do volunteer work but refrained for fear of impacting his disability benefits.... ”).
Although the ALJ was not required to do so based on his finding that Yang was malingering, the ALJ went on to provide additional “clear and convincing” reasons for determining that Yang was not credible regarding the intensity of his symptoms. See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040-41 (9th Cir.2003) (holding that the ALJ may reject the claimant’s testimony “upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so”). As the ALJ noted, two doctors questioned whether Yang was making an earnest effort to participate and answer questions honestly during his consultative medical evaluations. Dr. Rustom Damania reported that Yang had normal motor skills, strength, and gait, and that there was “[n]o objective reason for postural limitations though [Yang] did not make a good effort for range of motion of the lumbar spine.” He also noted “poor effort” with regard to grip strength and visual acuity. Dr. Greg Hirokawa likewise reported that Yang’s “participation effort was poor or questionable” throughout his mental status evaluation and concluded that Yang’s “symptoms of depression appear to be in the mild range.” We have held that a claimant’s “fail[ure] to give maximum or consistent effort” during medical evaluations is “compelling” evidence that the claimant is not credible. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.2002); see also Rautio v. Bowen, 862 F.2d 176, 179-80 (8th Cir.1988). The evidence of Yang’s efforts to counterfeit disabling symptoms was more than sufficient to meet the “clear and convincing” standard.
*208 Relying on these well-supported findings, the ALJ gave “specific and legitimate reasons” for discounting Dr. Mouanoutoua’s evaluation. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995). We have held that where the ALJ determines that the claimant’s description of his limitations is not entirely credible, the ALJ may discount a physician’s opinion that is based on those less than credible statements. Bray v. Comm’r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.2009); see also Turner v. Comm’r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir.2010). Here, Dr. Mouanoutoua’s evaluation was based primarily on Yang’s self-reporting, so the ALJ properly discounted the evaluation based on his finding that Yang was malingering and that his subjective complaints were not credible. Moreover, the ALJ gave several additional reasons for rejecting Dr. Mouanoutoua’s opinion. For instance, the ALJ pointed out that Yang did not consistently participate in his mental health treatment and was nearly discharged for multiple no-shows. In addition, the ALJ noted that Yang’s treating physician, Dr. Chu, reported that Yang was “essentially normal” and gave him a GAF of 65, indicating mild symptoms. See Kohler v. Astrue, 546 F.3d 260, 262 (2d Cir.2008). These reasons, too, were specific and legitimate. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.2008) (holding that, in assessing a claimant’s credibility, the ALJ may properly rely on “ ‘unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment’ ” (quoting Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996))); Ryan v. Comm’r of Soc. Sec., 528 F.3d 1194, 1204-05 (9th Cir.2008) (explaining that particular deference is owed to the opinions of treating physicians).
In short, there was well-documented evidence, including Yang’s own admissions, supporting the ALJ’s conclusion that Yang was malingering and exaggerating his symptoms. Because the ALJ’s conclusion is supported by inferences reasonably drawn from the record, we must uphold it even if “the evidence is susceptible to more than one rational interpretation.” Tom-masetti, 533 F.3d at 1038. Instead of applying our “highly deferential standard of review,” Valentine, 574 F.3d at 690, the majority searches the record to find other evidence that supports its own view of Yang’s case. Because the majority improperly substitutes its own judgment for that of the ALJ, I respectfully dissent.